UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

The New York Times Company,
et al.,

                Plaintiffs,

          v.                          15 Cv. 4829 (RA)

Federal Bureau of
Investigation,

                Defendant.

------------------------------x

                                      New York, N.Y.
                                      September 29, 2016
                                      4:00 p.m.

Before:

                    HON. RONNIE ABRAMS,

                                      District Judge

                    APPEARANCES

THE NEW YORK TIMES COMPANY
      For Plaintiffs
DAVID McCRAW, Vice President, Assistant General Counsel
IAN MacDOUGALL, Assistant General Counsel

UNITED STATES ATTORNEY'S OFFICE
      Attorneys for Defendant
ARASTU CHAUDHURY
CALEB HAYES-DENTS

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

THE DEPUTY CLERK:  The New York Times and Scott Shane versus the Federal Bureau of Investigations.  Docket 15 Cv. 4829.

Counsel, please state your appearances for the record.

MR. McCRAW:  Good afternoon, your Honor.  David McCraw for The New York Times and Scott Shane, here with my colleague Ian MacDougall.

MR. CHAUDHURY:  Arastu Chaudhury from the U.S. Attorney's office with Caleb Hayes-Dents on behalf of the FBI.

MR. MacDOUGALL:  Good afternoon, your Honor.

THE COURT:  Good afternoon.  I called this conference to address the parties' cross-motions for summary judgment. Since neither party requested oral argument, I am ready to rule.  That being said, if you want to be heard, I promise to keep an open mind.  But otherwise I'm ready to move forward.

I am going to deny both motions. While I find that the FBI has carried its burden of showing that the 302s at issue are protected by exemption 7(A) of the Freedom of Information Act, because there are questions regarding segregability and waiver, I have decided that in camera review is appropriate.

Because I think it is more efficient, I'm going to rule orally at this time.  You can, of course, get the transcript. I anticipate issuing a written ruling following in camera review.

I will briefly state the relevant facts for the

record.

On December 25, 2009, Umar Farouk Abdulmutallab, a Nigerian national, attempted to detonate a bomb concealed in his underwear while on board a flight from Amsterdam to Detroit. His attempt failed, and he was apprehended and later taken into custody and questioned.

From the day of his arrest through on or about April 30, 2010, the FBI conducted at least eighteen interviews of him. These interviews are memorialized in summaries, referred to as 302s.

Abdulmutallab was indicted and subsequently pled guilty to eight charges, including the attempted use of a weapon of mass destruction and conspiracy to commit an act of terrorism. On February 16, 2012, he was sentenced to four consecutive terms of life imprisonment and a fifth consecutive term of fifty years.

Abdulmutallab appealed his conviction and sentence, and that appeal was finally resolved when the Supreme Court denied his petition for a writ of certiorari on October 6, 2014.

Beginning in 2013, Scott Shane and the Times set out to obtain the 302s, and in February 2014, made an informal request to the FBI Office of Public Affairs. After being told, in July of that year, that the FBI could not release the interview summaries, on July 30, 2014, the Times filed a

Freedom of Information, or FOIA, request, which sought "All Form 302s with notes of FBI interviews with" Abdulmutallab.

After a series of intervening communications, decisions, and appeals, the FBI formally denied the FOIA request on March 20, 2015, citing Privacy Act Exemption j(2), which the FBI has indicated was in error, and FOIA exemptions b(1), b(3), b(6), b(7)(A), b(7)(C), and (b)(7)(E).1. The FBI denied the Plaintiffs' appeals, and Plaintiffs thus filed suit in this Court.

The parties have now both moved for summary judgment. After the FBI filed its opening brief, the FBI disclosed, in heavily redacted form, the interview notes.

To prevail on summary judgment in this context, the agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to FOIA. The adequacy of the search is not at issue here; instead, the parties dispute only whether the FBI has carried its burden that the interview summaries fall within an exemption.

FOIA's purpose, of course, is to encourage public disclosure of information in the possession of federal agencies. While these exemptions are to be narrowly construed, courts must nonetheless ensure they are given meaningful reach and application. See the D.C. Circuit's Center for National Security Studies case, 331 F.3d at 925. FOIA expressly provides for de novo review of an agency's decision to withhold records

and places the burden of persuasion on the agency.

Although the FBI withholds the 302s based on a number of exemptions, the primary one at issue here -- and the one that the FBI asserts exempts the interviews in full from disclosure -- is Exemption 7(A). My ruling today is thus focused on that exemption.

Exemption 7(A) permits an agency to withhold records or information compiled for law enforcement purposes, "but only to the extent that the production...could reasonably be expected to interfere with enforcement proceedings." See 5 U.S.C. Section 552(b)(7)(A). To qualify for the 7(A) exemption, the government must show that the withheld materials were compiled for a law enforcement purpose -- which is not in dispute here -- that "a law enforcement proceeding is pending or prospective and...release of the information could reasonably be expected to cause some articulable harm." See Azmy v. United States Department of Defense, 562 F. Supp. 2d at 605 [S.D.N.Y. 2008].

The Supreme Court has held that the government may carry its burden of proof under Exemption 7(A) with general, categorical responses, rather than document-by-document responses. See National Labor Relations Board v. Robbins Tire and Rubber Company, 437 U.S. at 236. "The government may satisfy its burden by submitting affidavits with sufficient detail for the court to evaluate the claimed exemption." See

the Local 32B-32J Services Employees International Union case, 1998 WL 726000, at *4 [S.D.N.Y 1998].

It is well-established that the judiciary owes a "measure of deference" to an agency's predictive judgment of the harm that will result from disclosure of information, particularly in cases that implicate national security, a uniquely executive purview.  See the Center for National Security Studies case, 331 F.3d at 927-928.

That said, "It is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate how disclosure will do so." See Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice, 746 F.3d at 1098 [D.C. Cir. 2014].

Here, the FBI's declaration, viewed in light of the appropriate deference owed to the executive on issues of national security, carries this burden, demonstrating that release of these 302s could "reasonably be expected to interfere with" ongoing and pending national security investigations.

The Hardy Declaration read together with its attachments describe how Abdulmutallab went to Yemen with the goals of meeting Al Qaeda leader Anwar Alwaki and becoming involved in violent jihad. He met Alwaki, trained for two weeks at a camp operated by Al Qaeda in the Arabian Peninsula, and then was given the bomb he attempted to detonate while on board

a commercial flight bound for Detroit. After he was apprehended, he was then interviewed, and, according to the declaration, the subsequent investigation resulted in "leads...connected to ongoing and pending national security investigations."

The declaration also details how disclosure could potentially harm these ongoing investigations: first, by allowing for identification of witnesses, risking their intimidation or harm; second, by allowing third-parties to counteract, alter or destroy the government's evidence; and third, by disclosing the government's legal and investigative strategies.

I have therefore concluded that the Hardy Declaration contains sufficient information to allow me to credit the FBI's ultimate determination that "disclosure of this information, in the midst of these active and ongoing investigations, is reasonably expected to interfere with those investigations and any resulting prosecutions." Hardy Declaration Paragraph 46.

Plaintiffs argue that the FBI has failed to carry its burden because of the amount of time that has passed since the interview summaries were compiled. But courts have regularly rejected such an argument where, as here, the government has represented that enforcement proceedings are reasonably anticipated, finding that "documents that would interfere with a lengthy or delayed investigation that may still lead to a

prospective law enforcement proceeding still fall within the protective ambit of Exemption 7(A)." Africa Fund v. Mosbacher, 1993 WL 183736, at *4; see also STS Energy Partners LP, 82 F. Supp. 3d at 333; Donovan v. F.B.I., 579 F. Supp. at 1127 (S.D.N.Y. 1983).

All that being said, I am nonetheless going to conduct in camera review in light of the questions raised regarding segregability and waiver.

As to segregability, the FBI asserted in David Hardy's first declaration that "segregability is not feasible as the records outlined above are exempt in full under Exemption 7(A)." Hardy Declaration Paragraph 77.

It appears that the FBI's position is that it is not required to review records withheld under 7(A) for segregable portions. Such a position, however, is contrary to a plain reading of the statute, from which it is clear that the segregability requirement applies to all FOIA exemptions, including 7(A). See Schiller v. National Labor Relations Board, 964 F.2d at 1209 [abrogated on other grounds]; Center for Auto Safety, 731 F.2d at 21.

Indeed, Judge Hamilton of the Northern District of California rejected the very same argument that the FBI seems to advance here, in Lawyers' Committee for Civil Rights of San Francisco Bay Area v. The U.S. Department of the Treasury, 2008 WL 4482855, at *14.

The position that segregation was not feasible here, moreover, was called into question by the FBI's subsequent release of portions of the interview summaries.

Although it is not entirely clear, the FBI now seems to suggest that it essentially conducted a segregability analysis, even though it was not required to do so, and concluded that "it would not be feasible to segregate any further non-exempt information." Second Hardy Declaration at Paragraph 20. But given the lack of clarity around the FBI's position and the partial release of the 302s, I think in camera review is called for.

In camera review is also particularly appropriate here, as waiver is at issue as well. As then-District Judge Sotomayor observed in Dow Jones v. U.S. Department of Justice, "courts are more likely to conduct in camera review in those cases where the plaintiff asserts that an otherwise applicable FOIA exemption has been waived." 880 F. Supp. at 151.

In advance of Abdulmutallab's sentencing, the U.S. Attorney's Office for the Eastern District of Michigan -- the office responsible for prosecuting Abdulmutallab -- submitted a memorandum, which included a three-page appendix that was, quote, "intended to provide the Court with details about Defendant Abdulmutallab's interactions with Al Qaeda in the Arabian Peninsula...in the months leading up to his attack on Northwest Flight 253." The appendix stated that "the bulk of

material provided comes from debriefing statements defendant made to FBI agents from January to April 2010."

The government also filed a twenty-two page report by Dr. Simon Perry, a professor of criminology at Hebrew University, which, according to the Report, "assessed the defendant's future dangerousness or likelihood of again attempting a martyrdom mission if released from prison." The government provided Dr. Perry, pursuant to a nondisclosure agreement, with redacted versions of the eighteen interviews notes at issue here. This report cited the interview summaries over 40 times.

The FBI maintains that these disclosures are not as specific as, nor do they match the material in, the interview notes that have not been disclosed. While that may be true, in light of the disclosures, the small number of documents at issue, and the public interest in their contents, in camera review is warranted. The Government does not object to such review.

I am mindful that in camera review should not be resorted to lightly and is to be the exception rather than the rule. The Second Circuit has, however, made clear that the district court enjoys "broad discretion...over whether to conduct in camera inspection," see Donovan, 806 F.2d at 59 [abrogated on other grounds] and, in light of the unique circumstances and history of this case, the balance of the

relevant factors counsel its use here.

Both parties' motions for summary judgment are accordingly denied without prejudice. They will be deemed renewed upon the submission of materials for my in camera review.

While I have only addressed Exemption 7(A) here, in the course of my in camera review, I will evaluate all of the asserted exemptions.

Now, let's discuss next steps. I know this case has been pending for too long so I'd like to move it along as quickly as possible. Let me ask the government, do you have a sense of how quickly can you produce the 302s for in camera review?

MR. CHAUDHURY:  Your Honor, I don't think it should take very long.  All things working out appropriately, within a week or two at most to get the records from the right person over to you.

THE COURT:  Would you suggest submitting anything ex-party to me together with those 302s, whether it's a memorandum explaining various investigations that you think may be compromised in some fashion and/or the various exemptions that you think apply to the particular material that was not redacted from what's been produced thus far?

MR. CHAUDHURY:  Yes, your Honor.  I was going to request the opportunity for us to supplement our submissions.

They would probably come in the form of another declaration where we would try and outline in greater detail exactly what your Honor is requesting. To that, we would ask maybe 30 days to put together that declaration and submit it to the Court.

THE COURT: That's fine. I would urge you to do it as soon as possible, and if you can do it on the same timeline as the 302s, I'd appreciate that. But if it needs to be 30 days, I'll allow that.

That's my ruling. Are there any other applications at this time?

MR. McCRAW: Your Honor, three points. I would ask your Honor to include in your request to the government for any further declaration that it address whether anything's changed in the past year. As you know from the case, a 7(A) is temporal. It's been a year since their declaration came in.

THE COURT: I think that's an excellent point. So the government shall do that, shall address that whether anything's changed since this case has been pending.

MR. McCRAW: Second, I would ask permission, in the same vein, and we can do this quickly, to see whether there are any further disclosures that have come, either through FOIA or otherwise, that may be relevant to the waiver argument. We are happy to do that within two weeks. I don't know of any. Mr. Shane's book has come out, so in the last year there was publicity around it. I don't know whether there's been other

FOIA requests that perhaps have been responded to, but I would just like the opportunity to supplement if we know that there have been any waivers in the year since we filed.

THE COURT:  That's fine.

MR. McCRAW:  Finally, I'd simply ask that, to the extent the government's supplemental declaration can be filed part in public, I would ask that it be done so.  I understand they may want to have confidential information in there, and I have no standing to object to that given the posture of the case, but if there are parts of it that could be made public, it should be.

Thank you, your Honor.

THE COURT:  I'm going to ask the government to keep that in mind.  If there is anything that can be publicly disclosed, it should be.  I agree that the default should be to have as much public as possible, so to the extent that it can be in redacted form as need be, that's fine.

MR. CHAUDHURY:  Understood, your Honor.

THE COURT:  Anything else?

MR. CHAUDHURY:  Nothing from the government.

MR. McCRAW:  No, your Honor.

THE COURT:  Thank you.  We're adjourned.

(Adjourned)